Dorothy CARAHER, as the Administrator of the Estate of Michael F. Caraher, deceased, and Dorothy Caraher and Francis Caraher, individually, Plaintiffs-Respondents,

v.

CITY OF MENOMONIE, Defendant-Appellant,

BRITTANY COURT APARTMENTS, Jean Anderson, W. Warren Barberg, Galen Scharer, L.J. Stucky, Lloyd Woller and Orwoll Anderson, as partners and Orwoll Anderson as General Partner, Brittany Court Partnership, a general partnership, Society Insurance, a Mutual Insurance Company, Dave Wagner d/b/a Wagner Property Management and WPM Liability Insurer, State Farm Fire & Casualty Company, John Does 1 through 10, John Does 11 through 20 and John Does 21 through 30, Defendants.

Court of Appeals

*No. 01–2772. Submitted on briefs May 6, 2002.—Decided June 4, 2002.*

2002 WI App 184

(Also reported in 649 N.W.2d 344.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Lawrence M. Rocheford* and *Jessica E. Schwie* and *Jardine, Logan & O'Brien, P.L.L.P.*, of St. Paul, MN.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Ronald S. Goldser* and *James P. Watts* and *Zimmerman Reed, P.L.L.P.*, of Minneapolis, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.   The City of Menomonie ap-

peals an order denying its motion for summary judgment in a wrongful death action brought by Dorothy Caraher, on her own behalf and as the administrator of the Estate of Michael F. Caraher, and Francis Caraher (the Carahers). Michael fell to his death from a cement-encased pipe that is part of the City's sewer system. The Carahers argue that the sewer pipe was commonly used as a footbridge and constituted a "known and present danger." They further contend that the City's failure to maintain or repair a fence that at one time was placed across the pipe was a ministerial action. The City argues that WIS. STAT. § 893.80(4),[1] providing immunity from tort actions to governmental bodies for discretionary acts, bars the Carahers' claims. We agree with the City.

¶ 2. We conclude that the facts of this case are materially distinguishable from those in *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), the case upon which the Carahers' "known and present danger" argument relies. Further, we conclude that the City's decision to erect a fence across the pipe and then not replace it after it was vandalized was discretionary. The Carahers' claims are thus barred because the City is entitled to governmental immunity under WIS.

---

[1] WISCONSIN STAT. § 893.80(4) provides:

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi- legislative, judicial or quasi-judicial functions.

All references to the Wisconsin Statutes are to the 1997–1998 version, unless otherwise noted.

STAT. § 893.80(4). Accordingly, we reverse the order denying the City's motion and remand with directions for the trial court to enter summary judgment in favor of the City.

## BACKGROUND

¶ 3.   In 1967, the City expanded its sanitary sewer system in the area known as South Broadway. The City engaged engineers who designed and submitted plans that provided for running a sewer pipe across Galloway Creek approximately eight feet above the waterbed. Specifically, the design plans called for a fifteen-inch sanitary sewer pipe supported by two precast concrete T-beams. The pipe was surrounded by felt paper, followed by a two-inch layer of Styrofoam for insulation. The pipe and insulation were encased in cement, which resulted in a cement structure about two feet, four inches in width. The design reduced the likelihood of the pipe freezing and protected the pipe.

¶ 4.   The Wisconsin Division of Resource Development approved the plans for the sewer system in 1968. Once the design plans were approved, the City invited bids for construction services. The Committee on Public Works selected the lowest bidder to construct the sanitary sewer system, and the construction was substantially completed in 1968. The pipe has not been reconstructed since then. According to the city engineer, the design is adequate and additional reconstruction to run the pipe underground would be cost prohibitive.

¶ 5.   The city land surrounding the pipe was conveyed to Brittany Court Apartments in 1988. In 1995, the owners of Brittany Court complained to the City that trespassers crossed their property to use the pipe

as a footbridge to cross Galloway Creek. The City decided to purchase a fence to erect across the pipe in order to appease Brittany Court. The City hired Century Fence to do the work. Century recommended an eight-foot-high chain link fence and fan guard to be constructed on top of the pipe. The City adopted Century's suggestions because it represented the least costly method of deterring trespassers. Only days after the City erected the fence, trespassers tore it down. The City decided to save the taxpayers' money by not replacing the fence because vandals would likely destroy any fence erected over the pipe.

¶ 6.   On July 25, 1999, Michael was walking to a friend's home after leaving a bar. In order to reach the friend's home, Michael and his friend had to cross Galloway Creek. Rather than following the public sidewalk that crossed the creek, they took a shortcut and used the pipe as a footbridge. Michael stepped off the cement-encased sewer pipe, struck his head, landed in the cement creek bed and drowned.

¶ 7.   The Carahers filed a wrongful death and survivor action seeking monetary damages as a result of Michael's death. The City moved for summary judgment, arguing that it was immune from suit under Wis. Stat. § 893.80(4). The trial court denied the City's motion and the City now appeals.

STANDARDS OF REVIEW

¶ 8.   The review of a grant or denial of summary judgment is de novo, using the same methodology as the trial court. *M & I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995). Summary judgment is appropriate where,

as here, the record demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Wis. STAT. § 802.08(2). We will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

¶ 9.    Whether a municipality is entitled to immunity is a question of law. *Kierstyn v. Racine Unif. Sch. Dist.*, 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999). Whether a municipality was engaging in discretionary or ministerial acts is also a question of law we review de novo. *In re Cavanaugh v. Andrade*, 202 Wis. 2d 290, 300, 550 N.W.2d 103 (1996).

DISCUSSION

¶ 10.    The City argues that Wis. STAT. § 893.80(4) bars the Carahers' claims against the City. The Carahers contend that (1) governmental immunity does not exculpate the City for creating or failing to address a "known and present danger"; and (2) the City's failure to maintain or repair the fence was a ministerial action and not entitled to immunity.[2] We turn first to a

---

[2] The Carahers also argue that in order for the City to create a "walkway" over Galloway Creek it was required but failed "to establish that it did the balancing or evaluation necessary to convert development of the sewer into a protected 'discretionary' act." However, the City did not create a walkway. It implemented a plan for expansion of the sewer system, and the design, approval and construction of a sewer system is a discretionary act entitling a municipality to immunity from any

discussion of governmental immunity as it applies to municipal sewer system implementations in general.[3]

A. GOVERNMENTAL IMMUNITY

¶ 11. WISCONSIN STAT. § 893.80(4), protects municipalities from any "suit . . . brought against such corporation . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." "Quasi-judicial and quasi-legislative acts are synonymous with discretionary acts . . . ." *Bauder v. Delavan-Darien Sch. Dist.*, 207 Wis. 2d 310, 313, 558 N.W.2d 881 (Ct. App. 1996). Conduct involving the municipality's

claim that challenges the design and construction of the sewer system. *See Anhalt v. Cities & Villages Mut. Ins. Co.*, 2001 WI App. 271, ¶ 12, 249 Wis. 2d 62, 637 N.W.2d 422. The City therefore did not need to prove a balancing or evaluation process to make the implementation of the sewer system plans discretionary.

[3] The Carahers also make numerous subarguments that are unsupported by the record, logic or law and that we address summarily. First, contrary to the Carahers' contention, the City did present evidence that the decision not to replace the fence was deliberate. Second, accepting the lowest bid for the construction of the pipe was not a ministerial act. Caraher points to no law requiring the City to accept the lowest bid. The City exercised its discretion to use the lowest bid as the dispositive criterion. Third, it is immaterial that there may be a question of fact as to whether the City was negligent. Governmental immunity assumes negligence. It is a defense that shields government from the consequences of negligent acts for which it might otherwise be responsible. Finally, whether the City failed to properly execute a ministerial duty is a question of law, not a question of fact. *Kimps v. Hill*, 187 Wis. 2d 508, 513, 523 N.W.2d 281 (Ct. App. 1994).

discretion, such as the weighing of social, political and economic considerations, is protected by statutory government immunity. *See id.* at 314.

¶ 12.   Governmental immunity for discretionary acts is based on the doctrine of separation of powers and the policy that the courts should not, through the medium of tort actions, second-guess certain policy-making activities that are legislative or executive in nature. *Hillman v. Columbia Cty.*, 164 Wis. 2d 376, 397, 474 N.W.2d 913 (Ct. App. 1991). The design, approval and construction of a sewer system is a discretionary act entitling a municipality to immunity from any claim that challenges the design and construction of the sewer system. *Anhalt v. Cities & Villages Mut. Ins. Co.*, 2001 WI App 271, ¶ 12, 249 Wis. 2d 62, 637 N.W.2d 422.

B. Known and Present Danger

¶ 13.   Governmental immunity is qualified by several exceptions.[4] The Carahers argue that the City is not immune because the pipe constituted a "known and present danger," which is an exception to Wis. Stat. § 893.80(4). *See Cords*, 80 Wis. 2d at 541. They contend that the pipe's use as a footbridge was so dangerous as to impose a ministerial duty to act. *See id.*

---

[4] Although there are several exceptions to the Wis. Stat. § 893.80(4) governmental immunity, the Carahers only argue that two of them apply to defeat the City's immunity. Other exceptions to governmental immunity not addressed here are (1) where conduct was malicious, willful and intentional, *C.L. v. Olson*, 143 Wis. 2d 701, 710–711, 422 N.W.2d 614 (1988), and (2) where the exercise of discretion was nongovernmental. *See Scarpaci v. Milw. Cty.*, 96 Wis. 2d 663, 682–86, 292 N.W.2d 816 (1980).

¶ 14.   In *Cords*, our supreme court decided that where there was a known and present danger, a government official had a duty to take action, and the failure to do so was not protected by immunity. *Id.* There, a park manager had actual knowledge of a trail ending above a ninety-foot drop. *Id.* Although the park manager knew that this presented a hazard, especially at night, he did nothing to alleviate the dangerous condition. *Id.* The court decided, "Anderson knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty." *Id.* Where the danger is obvious and the foreseeable result may be tragic, there is a ministerial duty to act. *Id.* at 541–42.

¶ 15.   The present circumstances do not, however, present a *Cords* situation. There are two principal material distinctions between this case and *Cords*. In *Cords*, the public was invited to use the path in question. *Id.* at 531. Here, the pipe was not designed or intended to be used as a footbridge. The public was not invited to make such use of it. In fact, there was a sidewalk provided to cross the creek not far from the pipe. Also, in *Cords*, the court noted that the danger—a narrow undercut—was not readily discernable. *Id.* at 532. Here, using the sewer pipe for an unintended purpose presents an obvious danger. Nothing in *Cords* suggests that it imposes a ministerial duty on government to protect the public from every manifest danger.

¶ 16.   In summary, the cement-encased sewer pipe was provided for sewer services, and the City did not intend it to be used as a footbridge. The City exercised its discretion in designing the sewer system, entitling it

615

to immunity. *See Anhalt*, 2001 WI App 271 at ¶ 12. The pipe did not create a known and present danger. *See Cords*, 80 Wis. 2d at 541.

C. MINISTERIAL DUTY

¶ 17.   The Carahers also contend that erecting and failing to replace the fence constituted maintenance of the sewer system. They argue that while sewer system design and construction is discretionary, *Anhalt*, 2001 WI App 271 at ¶ 12, sewer system maintenance is a ministerial act not protected by governmental immunity, citing *Menick v. City of Menasha*, 200 Wis. 2d 737, 745, 547 N.W.2d 778 (Ct. App. 1996). In *Menick*, this court held that maintaining a sewer system so as to not cause injury is a ministerial duty not entitled to governmental immunity. *Id.*

¶ 18.   A city is immune from discretionary acts, but not from ministerial acts. WIS. STAT. § 893.80(4). A discretionary act is one that "involves the exercise of discretion of judgment in determining the policy to be carried out or the rule to be followed [and] the exercise of discretion and judgment in the application of a rule to specific facts." *Spencer v. County of Brown*, 215 Wis. 2d 641, 648, 573 N.W.2d 222 (Ct. App. 1997) (citation omitted). In contrast, a ministerial act is one that is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976).

¶ 19.   We reject the Carahers' contention that maintaining the fence so as not to cause injury was

ministerial under *Menick*. *See Menick*, 200 Wis. 2d at 745. Once erected across the pipe, the fence did not become a part of the sewer pipe and thus part of the sewer system. The fence was not part of the design of the pipe and served no function in managing the City's sewage. We conclude that the decision to erect the fence was a discretionary decision made in response to a citizen's complaint. We further conclude that, in the absence of a *Cords* situation, the decision not to replace the fence is no less discretionary than the decision to erect it.

*By the Court.*—Order reversed and cause remanded with directions.