COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP888-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF442

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

KRIS M. MARCELLE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Kris M. Marcelle appeals a judgment of conviction, entered upon his no-contest pleas, for second-degree reckless injury, false imprisonment, intimidation of a victim, and strangulation. He argues the circuit court erroneously exercised its discretion by denying his last-minute request for substitution of counsel just days before the scheduled trial. He also argues he is entitled to plea withdrawal because his pleas were rendered involuntary as a result of the ineffective assistance of counsel he received in the preparation of his case. We reject these arguments and affirm.

## BACKGROUND

¶2     Marcelle was charged with eight crimes stemming from his pregnant girlfriend's allegations that Marcelle had committed acts of physical violence against her over the course of four days in July 2017. His trial was ultimately scheduled for three days, commencing on July 24, 2018.

¶3     At a hearing six days before trial, Marcelle expressed his desire to fire his appointed attorney. Applying the factors discussed in *State v. Boyd*, 2011 WI App 25, 331 Wis. 2d 697, 797 N.W.2d 546, the circuit court denied Marcelle's request. Marcelle subsequently pled no contest to the four offenses described above pursuant to a plea agreement with the State. The remaining charges were dismissed and read in. The State agreed to recommend a total sentence of ten years' initial confinement and thirteen years' extended supervision, with the defense free to argue. The court imposed consecutive sentences totaling fifteen years' initial confinement and sixteen years' extended supervision.

¶4     Marcelle sought postconviction relief, asserting the circuit court erred by denying his request for a new attorney and that he had received ineffective assistance of counsel in connection with the entry of his pleas.

2

Following a *Machner*[1] hearing and further briefing, the court denied the postconviction motion. As relevant here, it concluded it had properly exercised its discretion when it refused to grant Marcelle's request for substitute counsel. It also rejected Marcelle's contention that he was coerced into entering his pleas by his attorney's lack of preparation for trial. Marcelle now appeals.

## DISCUSSION

¶5 We first address Marcelle's argument that the circuit court erred by denying his request for new counsel.[2] We review a court's denial of substitute counsel for an erroneous exercise of discretion. *State v. Jones*, 2010 WI 72, ¶24, 326 Wis. 2d 380, 797 N.W.2d 378. Our review encompasses a number of factors, including the adequacy of the circuit court's inquiry into the defendant's complaint, the timeliness of the motion, and "whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Id.*, ¶25 (citation omitted).

---

[1] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] Although Marcelle refers to *Machner* throughout his argument, he appears not to be asserting he was denied constitutionally effective assistance of counsel in connection with his request for a new attorney. His failure to apply the test for ineffective assistance of counsel as part of this argument buttresses that conclusion.

Rather, he appears to argue that his attorney's *Machner* testimony should have some bearing on whether the circuit court erroneously exercised its discretion when it denied his request for new counsel prior to entering his plea. A retrospective hearing is necessary only if the circuit court failed to make an adequate inquiry into the reasons for the change-of-counsel request at the time it was made. *State v. Lomax*, 146 Wis. 2d 356, 362-65, 432 N.W.2d 89 (1988).

Here, as we further discuss below, the circuit court did not summarily deny Marcelle's request for substitution of counsel. It permitted Marcelle to fully explain the nature of the conflict and reasons for his request. Accordingly, a retrospective hearing was not necessary, and we confine our review to the record before the court at the time of its decision.

¶6     We conclude the circuit court did not erroneously exercise its discretion.  The court permitted Marcelle to make a lengthy statement regarding the reasons for his substitution-of-counsel request.  Marcelle stated that he disagreed with his attorney about trial strategy, he did not believe his attorney was prepared for trial, and defense counsel had been uncommunicative.  Marcelle was skeptical that his attorney had his "best interest at heart," and he believed defense counsel was "trying to force [him] to take a deal."

¶7     The State opposed an adjournment, noting the late timing of the request and that the victim objected to a delay.  The State pointed out that one of its witnesses was in the military and had been granted a special approval to be present on the scheduled trial dates, with the flight already paid for.

¶8     The circuit court found that a new attorney would require substantial time to prepare Marcelle's defense to the serious felony charges.  Given the court's calendar, a new trial would not be expected to occur until the following spring.  The court also noted that Marcelle's substitution-of-counsel request came close to the trial date, when an adjournment would be extremely inconvenient.

¶9     The court nonetheless observed that a "bona fide conflict" between Marcelle and his attorney could warrant the delay.  It found, however, that no such conflict existed: Marcelle was primarily upset with his attorney's "honest assessment of the case."  When Marcelle interjected to reiterate that he did not believe his counsel was prepared for trial, the court inquired of counsel whether that was true.  Defense counsel responded that the only holdup was their difficulty communicating; counsel stated he had reviewed all of the discovery and had given all but perhaps a few recently disclosed pages of it to Marcelle.

¶10 Marcelle faults the circuit court for failing to consider, among other things, whether Marcelle had "any fair opportunity to assess his attorney or even make the request" for substitution of counsel prior to the time he did. While those might be relevant considerations, they do not alter the court's conclusion that the dispute concerned the perceived strength of Marcelle's defense nor the undeniable fact that the trial was imminent when Marcelle made his request. Our standard of review on this issue does not require circuit courts to anticipate and address every nuance of a defendant's argument. Rather, the exercise of discretion "contemplates a reasoning process which considers the applicable law and the facts of record, leading to a conclusion [that] a reasonable judge could have so concluded." *State v. Jeske*, 197 Wis. 2d 905, 912, 541 N.W.2d 225 (Ct. App. 1995).

¶11 Here, although the court acknowledged there were some communication difficulties, it found that the disagreement between Marcelle and his attorney primarily turned on defense counsel's evaluation of the strength of the case and did not amount to "a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *See Jones*, 326 Wis. 2d 380, ¶25 (citation omitted). The court appropriately balanced the relevant considerations and reached a reasonable conclusion not to discharge Marcelle's counsel. The court conducted a thorough inquiry, after which it determined that the request for substitution of counsel was untimely. We perceive no reason to second-guess these determinations.

¶12 Marcelle next argues he is entitled to plea withdrawal. To withdraw a guilty plea after sentencing, the defendant must show that allowing the plea to stand would result in a manifest injustice. *State v. Jeninga*, 2019 WI App 14, ¶11, 386 Wis. 2d 336, 925 N.W.2d 574. Marcelle argues he has demonstrated a

manifest injustice because he received constitutionally ineffective assistance of counsel in connection with his plea. *Id.* Specifically, Marcelle argues he "felt … backed into a corner by trial counsel's lack of diligence and the trial court's denial of his motion for new counsel."

¶13 Ineffective assistance of counsel, in turn, requires the defendant to demonstrate both that his or her counsel's performance was deficient and that the deficiency was prejudicial. *Id.*; *see also* **Strickland v. Washington**, 466 U.S. 668, 687 (1984). Deficient performance requires a showing of errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. **Strickland**, 466 U.S. at 687. To prove prejudice, the defendant must show that there is a reasonable probability that he or she would not have pled and would have gone to trial but for counsel's deficient performance. **Jeninga**, 386 Wis. 2d 336, ¶12.

¶14 We agree with the circuit court's assessment that Marcelle has failed to demonstrate prejudice arising from any alleged ineffectiveness on the part of his attorney. The court noted at the plea hearing that Marcelle was previously "very intent … on wanting to take this case to trial," and it asked what had changed his mind. Marcelle responded that the denied motion for substitution of counsel and his belief that his attorney was not adequately prepared for trial "plays a big part in it." The court again stated its conclusion from the previous hearing that Marcelle was primarily disagreeing with his attorney's assessment of the strength of the case, which the court noted "doesn't mean he wasn't actually preparing to be ready for the trial."

¶15 Marcelle disputed that characterization, asserting that his request for substitute counsel was based on "the fact that we didn't have time to sit down and

6

properly communicate, and it was kind of a breakdown in communication from the get-go." The court then noticed that Marcelle had filed a motion for reconsideration of the substitution-of-counsel denial that day, and it asked for defense counsel's response.

¶16 Defense counsel stated that after the court decided he would stay on the case, he had met with Marcelle at the jail several times.[3] During the visits, he and Marcelle had "gotten along fine," had been able to communicate, and had "not talked about any issues that we ha[d] once we got down to brass tacks and prepared for trial." Counsel further stated that he believed Marcelle had reached the plea decision of his own volition and decided "to enter no contest pleas rather than take his chances with a jury." Marcelle then reaffirmed his decision to enter the no-contest pleas.

¶17 At the ***Machner*** hearing, Marcelle again asserted his defense attorney was not communicative and was unprepared for trial. But when directly asked why he elected to enter pleas instead of take the case to trial, Marcelle responded: "By pleading guilty and taking that plea agreement, I mean, the time was reduced. I guess it was just kind of to cut my losses so to speak."

¶18 During cross-examination, the prosecutor elicited responses from Marcelle that cast doubt on his commitment to bringing the case to trial. Marcelle acknowledged that his defense counsel negotiated a plea agreement that substantially reduced his exposure, including the elimination of a Class C felony

---

[3] Defense counsel stated he and Marcelle had "met … three or four times since the last court date." According to Marcelle's postconviction materials, defense counsel met with him twice prior to entering his pleas.

kidnapping offense. Marcelle testified that he believed he would have received a far better plea deal "had I had a fair attorney that could properly put my case together." The prosecutor then pointed out that Marcelle had requested that his defense attorney make a counteroffer, indicating that Marcelle was interested in resolving the case rather than taking it to trial.

¶19 Defense counsel did, in fact, propose a counteroffer, the circumstances of which also inform our conclusion that Marcelle was not prejudiced by any alleged deficiencies on the part of his attorney. Defense counsel had, by email, advised the prosecutor of Marcelle's version of events, to which the prosecutor responded, "We will try this case then[.]" Defense counsel then attempted to negotiate the amount of the joint sentencing recommendation, to which the prosecutor replied, "I am going to hold on my offer." When defense counsel proposed a counteroffer, the prosecutor responded, "He can either take my original offer, or we are going to try the case."

¶20 Based on the totality of the appellate record, there is not a reasonable probability that Marcelle would have insisted on going to trial absent any alleged deficient performance on the part of his attorney. Marcelle was clearly interested in resolving his case, acknowledging that he took the State's proposed plea deal because it substantially reduced his exposure to criminal penalties. The State's responses to defense counsel's overtures during plea negotiations show that Marcelle was unlikely to get a better plea offer, regardless of any further investigative efforts or trial preparation by his attorney. Marcelle has failed to establish a manifest injustice warranting plea withdrawal.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).